UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| **MATTHEW KURTENBACH**, | ) | Case No. Civ. 19-5:19-CV-5042 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **VERIFIED COMPLAINT** |
| | ) | |
| **KRISTI NOEM**, | ) | |
| GOVERNOR OF THE STATE OF | ) | |
| SOUTH DAKOTA, | ) | |
| **JASON RAVNSBORG**, | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OFSOUTH DAKOTA, | ) | |
| **TREVOR JONES**, | ) | |
| EXECUTIVE DIRECTOROF THE | ) | |
| DEPARTMENT OF PUBLIC SAFETY OF | ) | |
| THE STATE OF SOUTH DAKOTA, | ) | |
| **SCOTT BOLLINGER**, | ) | |
| DIRECTOR OF THE OBLIGATION | ) | |
| RECOVERY CENTER, OF THE | ) | |
| STATE OF SOUTH DAKOTA, | ) | |
| **CASSIE WENDT**, | ) | |
| BUTTE COUNTY, SOUTH DAKOTA | ) | |
| STATE'S ATTORNEY, | ) | |
| **WENDY KLOEPPNER**, | ) | |
| LAKE COUNTY, SOUTH DAKOTA | ) | |
| STATE'S ATTORNEY, AND | ) | |
| **THE STATE OF SOUTH DAKOTA** | ) | |
| **OBLIGATION RECOVERY CENTER**, | ) | |
| | ) | |
| Defendants. | ) | |

## JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation, under color
   of state law, or rights secured by the Constitution of the United States, violations of the Fair
   Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692 *et seq*., and violations South
   Dakota state torts to which this Court has pendent jurisdiction pursuant to 28 U.S.C. §
   1367(a). The United States District Court for the District of South Dakota is the appropriate

venue pursuant to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 1692k(d).

## PARTIES & NATURE OF THE ACTION

2. Plaintiff, Matthew Kurtenbach, was at all times relevant to this lawsuit a resident of the State of South Dakota. Throughout the vast majority of the time frames relevant to this lawsuit Kurtenbach was an inmate within the legal custody and control of the State of South Dakota. Kurtenbach is currently in the legal and physical custody of the United States Marshal facing a Petition to Revoke Supervised Release before this Court. *See United States v. Kurtenbach*, Cr. 17-50071-JLV, (D.S.D. May 6, 2019)

3. Defendant, Kristi Noem, is the current Governor of the State of South Dakota. In that role Defendant Noem is South Dakota's Chief Executive and is responsible for the overall operation the State's various agencies and departments. Implicit in this responsibility is Noem's responsibility that the agencies and departments and the employees appointed to oversee these agencies and/or departments conduct said agencies and/or departments in a manner consistent with the Constitution of the United States of America. Defendant Noem is sued solely in her official capacity for injunctive relief only.

4. Defendant, Jason Ravnsborg, is the current Attorney General of the State of South Dakota. In that role Defendant Ravnsborg acts not only as South Dakota's Chief Law Enforcement Officer but as the South Dakota's legal counsel. Implicit in that responsibility is Ravnsborg's duty to ensure that the laws of South Dakota and the manner that the laws of South Dakota are implemented comport with the Constitution of the United States of America. Defendant Ravnsborg is sued in his official capacity for injunctive relief only.

5. Defendant, Trevor Jones, is the current Executive Director of the South Dakota Department of Public Safety ("SDDPS"). In that role he is responsible for the issuance of South Dakota Driver's Licenses. That role also charges him with the suspension and revocation of South

Dakota Driver's Licenses. He is the official policymaker for the SDDPS and in that role has final rule-making authority for the agency. He is also responsible for the training policies of the SDDPPS and is liable for any acts and/or omissions that result from inadequate training. Defendant Jones, is sued in both his individual and official capacities for injunctive and monetary relief.

6. Defendant, Scott Bollinger , is the current Director of the South Dakota Obligation Recovery Center. In that rule he is responsible for the procedures used to collect debts owed to the State of South Dakota. He is the official policymaker for the South Dakota Obligation Recovery Center and in that role has final rule-making authority for the agency. He is also responsible for the training policies of the South Dakota Obligation Recovery Center and is liable for any acts and/or omissions that result from inadequate training. Defendant Bollinger, is sued in both his individual and official capacities for injunctive and monetary relief.

7. Defendant, Cassie Wendt , is the current State's Attorney of Butte County South Dakota. Upon information and belief, in that role she requested that Kurtenbach's South Dakota Driver's License be suspended for non-payment of a court debt. Defendant Wendt , is sued in both her individual and official capacities for injunctive and monetary relief.

8. Defendant, Wendy Kloeppner , is the current State's Attorney of Lake County South Dakota. Upon information and belief, in that role she requested that Kurtenbach's South Dakota Driver's License be suspended for non-payment of a court debt. Defendant Kloeppner, is sued in both her individual and official capacities for injunctive and monetary relief.

9. Defendant,State of South Dakota Obligation Recovery Center, is an agency responsible for the collection of debts owed to the State of South Dakota and meets the definition of a debt collector as the term is defined by 15 U.S.C. § 1692(a)(6). This Defendant is sued solely for

3

violations of the Fair Debt Collection Practices Act and state law claims as this agency is not a "person within the meaning of 42 U.S.C. § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

10. The nature of this action can be summarized as follows: Plaintiff's South Dakota Driver's License was suspended based solely on his inability to pay misdemeanor court debts that were over ten years old and had absolutely nothing to do with driving. His license was suspended without notice or opportunity to be heard. This suspension was not contemplated during his plea nor was he advised of the potential. This suspension possibility was not made a part of the court's oral or written sentence. This suspension was not even a legal punishment at the time that the crimes at issue occurred or when Kurtenbach was sentenced. These blatant Constitutional violations had devastating and predictable effects on the Plaintiff who was recently released from prison and attempting to reintegrate to society. It cost Plaintiff his ability to engage in his occupation and ultimately led Plaintiff to relapse to drug use and fraudulent means to support himself and his drug habit.

## RELEVANT FACTUAL BACKGROUND

11. On or about November 5, 2007, Kurtenbach was charged in the Magistrate Court of the Third Judicial Circuit of the State of South Dakota with a misdemeanor charge of issuing non-sufficient funds checks (File No. 39399M0702038). Kurtenbach, via counsel, pleaded guilty to the charge on February 7, 2008, and received a fully suspended thirty (30) day jail sentence. Nowhere in the plea agreement nor in the Court's oral or written sentence was Kurtenbach informed that he may, at some unspecified future time, lose his Driver's License if he was unable to pay the costs assessed by the Court.

12. Kurtenbach was in the custody of the State of Wyoming when his counsel entered the above-referenced guilty plea and thus was unable to immediately pay the costs assessed by

4

the Court. Kurtenbach was released from Wyoming's custody in April 2008.

13. On or about May 30, 2008, Kurtenbach was charged in the Magistrate Court of the Fourth Judicial Circuit of the State of South Dakota with a misdemeanor charge of issuing a series of no-account checks (File No. C0800077A0). Kurtenbach, via counsel, pleaded guilty to the charge on September 26, 2008, and received a fully suspended one (1) year jail sentence. Nowhere in the plea agreement nor in the Court's oral or written sentence was Kurtenbach informed that he may, at some unspecified future time, lose his Driver's License if he was unable to pay the costs assessed by the Court.

14. From July 2008- August 2013 Kurtenbach was continuously incarcerated in the States of North Dakota, South Dakota, and Wyoming for his role in a check forging and identity theft operation. While incarcerated for these five years Kurtenbach was unable to pay the costs assessed by the courts.

15. Upon his release in August 2013 Kurtenbach was placed under the supervision of South Dakota Parole Agent Nathan Hower. Agent Hower had access to to the South Dakota Unified Judicial System's Odyssey Portal and was able to see Kurtenbach's restitution obligations within the State of South Dakota. Agent Hower developed a restitution plan for Kurtenbach taking into account Kurtenbach's obligations and ability to pay. There is no record that Kurtenbach was ever sanctioned for not complying with the restitution plan ordered by Agent Hower.

16. In February of 2014 Kurtenbach is again placed in custody and ultimately pleads guilty to Possession of a Controlled Susbatnce and receives a five (5) year prison sentence of which he serves two (2) years before being released on parole. Kurtenbach is then transferred to the custody of the State of Wyoming to answer as parole violation based upon the South Dakota conviction. Kurtenbach is released from Wyoming's custody in May of 2016. During

5

this incarceration Kurtenbach was without financial means to pay the costs assessed by the Courts in Paragraphs 11 and 13.

17. Upon his release in May 2016 Kurtenbach was placed under the supervision of South Dakota Parole Agent James Hansen. Agent Hansen had access to to the South Dakota Unified Judicial System's Odyssey Portal and was able to see Kurtenbach's restitution obligations within the State of South Dakota. Agent Hansen developed a restitution plan for Kurtenbach taking into account Kurtenbach's obligations and ability to pay. There is no record that Kurtenbach was ever sanctioned for not complying with the restitution plan ordered by Agent Hansen.

18. In approximately September of 2016, Kurtenbach is re-issued a South Dakota Driver's License. This license has an expiration date of 2021.

19. In November 2016, Kurtenbach is again placed in custody and is eventually charged with controlled substance violations in this Court. Kurtenbach ultimately pleads guilty to one count of Distribution of a Controlled Substance. At the conclusion of the federal proceedings Kurtenbach is returned to the custody of the State of South Dakota and is granted parole by the South Dakota Board of Pardons and Paroles in April of 2018. Kurtenbach is released to parole supervision in April 2018.

20. Upon his release in April 2018 Kurtenbach was placed under the supervision of South Dakota Parole Agent Kaylee Grueb. Agent Grueb had access to to the South Dakota Unified Judicial System's Odyssey Portal and was able to see Kurtenbach's restitution obligations within the State of South Dakota. Agent Grueb developed a restitution plan for Kurtenbach taking into account Kurtenbach's obligations and ability to pay. There is no record that Kurtenbach was ever sanctioned for not complying with the restitution plan ordered by Agent Grueb.

21. In June, 2018, South Dakota Parole Services directs that Kurtenbach be placed in custody for going to work without Agent Grueb's approval. Kurtenbach's parole is subsequently revoked and he serves out the remained of his sentence, discharging this sentence on December 20, 2018.

22. Upon his release in December 2018, Kurtenbach continues his term of federal supervised release and is supervised by Supervising United States Probation Officer Roy Weber. As Agent Weber's Petition to Revoke states Kurtenbach found employment and a suitable living arrangement nearly immediately upon his release from custody. Kurtenbach was first employed as an Automotive Sales Consultant at T&L Auto Sales in Sioux Falls, South Dakota, and then made a collateral move, solely on his own choosing to Next2New Auto Sales in Sioux Falls, South Dakota. One of the requirements to be employed as an Automotive Sales Consultant is a valid Driver's License which Kurtenbach believed that he possessed. A Sales Consultant is required to have a Driver's License as they regularly move vehicles throughout the sales lot and ride along on test drives and must be able to drive the vehicle back if something occurs during the test drive. The dealership's insurance would not cover any acts that were the result of the dealership employing an unlicensed driver.

23. In mid February 2019 Kurtenbach is stopped by a tribal police officer near Flandreau, South Dakota,  and is asked to produce, among other things, his Driver's License which Kurtenbach does. The tribal police officer informs Kurtenbach that South Dakota has listed his license as suspended. Kurtenbach informs the officer that he has not had a driving offense in over five (5) years and that was a speeding ticket for going ten miles over the speed limit. The tribal officer issues Kurtenbach a verbal warning to check on his license status.

24. Kurtenbach makes inquiries within the South Dakota Department of Public Safety and

7

learns that at some unspecified time between September 2016 and February 2019 his Driver's License was suspended for non-payment of old fines. The Department of Public Safety provides Kurtenbach a number to call to check on the status of these debts and possibly reinstate his Driver's License. Kurtenbach calls that number and is told that they had no part in suspending Kurtenbach's Driver's License.

25. Through his own research Kurtenbach learns of a law passed in 2015, that purports to allow the State of South Dakota to suspend, among other things, a person's Driver's License based solely upon non-payment of court debts. Kurtenbach makes inquiries into the agency formed to enforce this law (South Dakota Obligation Recovery Center). Most of Kurtenbach's interactions with this company involve a revolving door of unaccountability. During one call Kurtenbach is informed that the Butte County State's Attorney requested the suspension of his Driver's License, during a subsequent call he is told that it was the Lake County State's Attorney, when Kurtenbach seeks specifics he regularly placed on hold until the call is disconnected. At no point does any employee of this agency inquire into Kurtenbach's ability or inability to pay, offer Kurtenbach a hearing to contest the legality of suspending Kurtenbach's Driver's License, or offer Kurtenbach any sort of payment plan that would allow Kurtenbach maintain his driving privileges. Of particular note in a conversation recorded by Kurtenbach an employee of the South Dakota Obligation Recovery Center informs Kurtenbach that the Fair Debt Collection Practices Act does not apply to South Dakota debts.

26. Kurtenbach is well aware of the struggles that come with felons attempting to find gainful employment. For example in 2018 Kurtenbach was employed as an investigative/research assistant for attorneys Nate Nelson and Shiloh MacNally. During this time Kurtenbach had access to Nelson's email and would see on an almost daily basis various court personnel

8

(judges, prosecutors, clerks, and even secretaries) inquiring as to why Nelson had hired Kurtenbach). One email from a Court Administrator hinted that certain judges would be inclined to not grant Nelson court appointed cases if he continued to employ Kurtenbach. Kurtenbach has also learned of an instance where Nelson and MacNally were summoned before South Dakota United States District Court Chief Judge Jeffrey Viken and questioned about their employment of Kurtenbach. Apparently Kurtenbach had mentioned to his Probation Officer something about how Probation Officers from the Western Division of South Dakota prepare harsher Pre-Sentence Investigation Reports than Probation Officers from the Southern Division of South Dakota. The Probation Officer wrongly assumed that Kurtenbach obtained this information based upon his employment with Nelson and MacNally. While Kurtenbach did review a couple of PSI's during his employment with Nelson and MacNally none were prepared by a Probation Officer from the Southern Division and Kurtenbach was referencing the numerous reports that he he had reviewed for inmates while in custody with those inmates. Kurtenbach has also learned that Chief Judge Viken has issued a standing order that prohibits felons (on the rare instance where an attorney is inclined to hire one) from accessing discovery materials in federal cases. This order not only puts felons at a disadvantage as opposed to non-felons but makes them basically unemployable for this type of work irregardless of their actual qualifications or abilities.

27. Based upon his past experiences with finding suitable employment and faced with the prospect of again losing his job, this time based solely on his inability to pay a court debt for misdemeanor convictions that are over ten (10) years old Kurtenbach relapsed into drug use on or about February 21, 2019. Kurtenbach told his federal probation officer that the relapse was due to an argument with his girlfriend and this was partially true. Kurtenbach had

9

informed his girlfriend of the license situation and what it meant for his employment. This caused the obvious stressors and Kurtenbach returned to his coping mechanism.

28. Kurtenbach continued his employment until approximately March 10, 2019, and at that time informed his boss of his license status. Kurtenbach's boss informed Kurtenbach that he would need a valid license to continue his employment.

29. Without employment, with bills to pay, and no legitimate way to pay the approximately $2,500 (Kurtenbach was never given an actual figure, nor was he ever told that once he paid this the State would not simply dig up another decade old debt and keep Kurtenbach from working) that is required to clear the debts and fueled by his relapse into methamphetamine use Kurtenbach begins writing non-sufficient funds checks. Kurtenbach's initial plan was to write enough to pay off his court debt, obtain his license, and continue his employment as an Automotive Sales Consultant, and once working hopefully pay of the checks before the collection agencies turn the checks over for prosecution.

30. Given Kurtenbach's drug use and history of gambling addiction this plan failed miserably and resulted in Kurtenbach writing non-sufficient funds checks in numerous jurisdictions. The drug use and checks were a driving factor in Agent Weber seeking to revoke Kurtenbach's federal Supervised Release.

31. Kurtenbach is currently incarcerated and is facing a significant loss of liberty. The actions of the Defendants in unconstitutionally suspending Kurtenbach's Driver's License caused Kurtenbach to lose his employment, relapse into drug use, and while in an altered state of mind commit additional fraud crimes in an ill fated effort to save his employment. To be clear Kurtenbach will prove that up until faced with the loss of employment he was a model supervised release case. Kurtenbach did not miss appointments, passed all drug tests, and did exactly what Agent Weber requested of him.

## LEGAL CLAIM I – VIOLATION OF DUE PROCESS & EQUAL PROTECTION BASED UPON SOUTH DAKOTA'S HARSHER TREATMENT OF INDIGENTS

32. Directly on point is a recent case from the Middle District of Tennessee. In *Thomas v. Haslam*, 303 F.Supp.3d 585 (M.D. Tenn. 2018), the Court was called upon to examine a Tennessee statutory scheme that allowed the State of Tennessee to suspend a Driver's License based on a failure to pay a court debt. In a separate opinion the Court ultimately granted summary judgment in favor of the Plaintiffs finding that the law lacking an indigent exception violates Due Process and Equal Protection. *Hixson v. Haslam*, _____ F.Supp.3d _____, 2018 U.S. Dist. Lexis 114622 (M.D. Tenn. July 2, 2018). While the above-cited case is not binding precedent on this Court its persuasive authority can not be denied. In two well reasoned opinions Judge Trauger correctly set out the applicable law regarding equal treatment of criminal defendants who are simply financially unable to pay the costs assessed by the Court.

33. There is no distinction between the claim that Kurtenbach now asserts and the claims in the *Thomas* and *Hixson* cases. To the extent that the defendants in the instant case may see any distinctions they are distinctions without a difference. In fact Kurtenbach likely has a stronger claim as the defendants in this matter knew or should have know that, while Kurtenbach was in their custody (by and through the South Dakota Department of Corrections) making at most .25 per hour, he was financially unable to pay, and during the periods that Kurtenbach was not in their physical custody he was in their legal custody and the State of South Dakota determined what amount Kurtenbach would pay in restitution towards each outstanding obligation and Kurtenbach complied with South Dakota's determination.

34. The South Dakota statutory scheme that allows the State to suspend a Driver's License

based solely on old court debts irregardless or one's actual ability to pay violates d___ ___ ___Constitutional Due Process and Equal Protection as it treats a person who is simply unable to pay more harshly than a counterpart with the financial means to do so. As Judge Trauger noted in *Thomas* this is "a law that guarantees that an indigent person will lose his license while giving a non-indigent person the opportunity not to. That the law is 'nondiscriminatory on its face' does not negate the fact that imposing a payment obligation on the indigent 'may be grossly discriminatory in its operation.'" *Id*. 303 F.Supp.3d at 615 (quotation omitted).

35. Governor Noem knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. This law is applied against indigents often enough that Noem knew or should have known of of the Constitutional violations. Furthermore, Governor Noem failed to properly train and supervise her subordinates which allowed the Constitutional violations to occur. Governor Noem's failure to supervise and adequately train her subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference she tacitly authorized the Constitutional violations described herein.

36. Attorney General Ravnsborg knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. This law is applied against indigents often enough that Ravnsborg knew or should have known of of the Constitutional violations. Furthermore, Attorney General Ravnsborg failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Attorney General Ravnsborg's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he

tacitly authorized the Constitutional violations described herein.

37. Executive Director Jones knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. This law is applied against indigents often enough that Jones knew or should have known of of the Constitutional violations. Furthermore, Executive Director Jones failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Executive Director Jones's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

38. Director Bollinger knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. This law is applied against indigents often enough that Bollinger knew or should have known of of the Constitutional violations. Furthermore, Director Bollinger failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Director Bollinger's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

39. State's Attorney Wendt knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. State's Attorney Wendt knew or should have know that making a request that a Driver's License be suspended without inquiring as to one's actual ability to pay violates Constitutional Due Process and Equal Protection.

13

40. State's Attorney Kloeppner knew or should have known that a law that allows discriminatory treatment of individuals based solely on their financial status violates Constitutional Due Process and Equal Protection. State's Attorney Kloeppner knew or should have know that making a request that a Driver's License be suspended without inquiring as to one's actual ability to pay violates Constitutional Due Process and Equal Protection.

41. Kurtenbach seeks the following relief:

> (a) Against Governor Noem: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Governor Noem and her subordinates to refrain from suspending Driver's Licenses based solely on one's financial inability to pay old court debts and requiring, before a suspension, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to.

> (b) Against Attorney General Ravnsborg: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Attorney General Ravnsborg and his subordinates to refrain from suspending Driver's Licenses based solely on one's financial inability to pay old court debts and requiring, before a suspension, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to.

> (c) Against Executive Director Jones: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Executive Director Jones and his subordinates to refrain from suspending Driver's Licenses based solely on one's financial inability to pay old court

14

debts and requiring, before a suspension, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to. Furthermore, against Jones, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(d) Against Director Bollinger: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Director Bollinger and his subordinates to refrain from suspending Driver's Licenses based solely on one's financial inability to pay old court debts and requiring, before a suspension, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to. Furthermore, against Bollinger, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(e) Against State's Attorney Wendt: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Wendt and her subordinates to refrain from requesting that the State suspend Driver's Licenses based solely on one's financial inability to pay old court debts and requiring, before making such a request, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to. Furthermore, against Wendt, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(f) Against State's Attorney Kloeppner: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Kloeppner and her subordinates to refrain from requesting that the State suspend Driver's Licenses based solely on one's

financial inability to pay old court debts and requiring, before making such a request, a specific finding that the non-payment of the court debt was willful – that is the individual had the financial ability to pay, but simply chose not to. Furthermore, against Kloeppner, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

### LEGAL CLAIM II – VIOLATION OF DUE PROCESS AS KURTENBACH WAS NOT GIVEN ANY NOTICE OR MEANINGFUL OPPORTUNITY TO CONTEST THE SUSPENSION

42. At no point did Kurtenbach receive notice that the Defendants were seeking to suspend his license.

43. At no point did Kurtenbach receive a hearing during which he would have been permitted to contest the legality of the proposed suspension.

44. As this Court has found "[t]he due process clause ensures every individual subject to a deprivation 'the opportunity to be heard at a meaningful time and in an meaningful manner.'" *Oglala Sioux Tribe v. Hunnik*, 993 F.Supp.2d 1017, 1036 (D.S.D. 2014, Viken CJ) (citations and quotations omitted).

45. The deprivation at issue here – the loss of a previously issued Driver's License implicated Kurtenbach's Due Process rights. Nearly fifty years ago Justice Brennan explained: "Once [driver's] licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

46. The Defendants violated Kurtenbach's rights of Due Process by suspending his Driver's License without any notice and without any opportunity (pre-deprivation or post-

16

deprivation) to be heard.

47. It is worth noting that this same issue was decided in the Plaintiff's favor in *Hixson v. Haslam.* _____ F.Supp.3d _____, _____, 2018 U.S. Dist. Lexis 114622 (M.D. Tenn. 2018).

48. Governor Noem knew or should have known that a law that allows the Defendants to suspend a Driver's License without notice or any opportunity to be heard violates Constitutional Due Process. This law is applied often enough that Noem knew or should have known of of the Constitutional violations. Furthermore, Governor Noem failed to properly train and supervise her subordinates which allowed the Constitutional violations to occur. Governor Noem's failure to supervise and adequately train her subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference she tacitly authorized the Constitutional violations described herein.

49. Attorney General Ravnsborg knew or should have known that a law that allows the Defendants to suspend a Driver's License without notice or any opportunity to be heard violates Constitutional Due Process. This law is applied often enough that Ravnsborg knew or should have known of of the Constitutional violations. Furthermore, Attorney General Ravnsborg failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Attorney General Ravnsborg's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

50. Executive Director Jones knew or should have known that a law that allows the Defendants to suspend a Driver's License without notice or any opportunity to be heard violates Constitutional Due Process. This law is applied often enough that Jones knew or should have known of of the Constitutional violations. Furthermore, Executive Director Jones

17

failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Executive Director Jones's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

51. Director Bollinger knew or should have known that a law that allows the Defendants to suspend a Driver's License without notice or any opportunity to be heard violates Constitutional Due Process. This law is applied often enough that Bollinger knew or should have known of of the Constitutional violations. Furthermore, Director Bollinger failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Director Bollinger's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

52. Kurtenbach seeks the following relief:

(a) Against Governor Noem: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Governor Noem and her subordinates to refrain from suspending Driver's Licenses without notice and an opportunity to contest the suspension, and before a suspension, a specific finding that reasonable efforts (eg the sort of efforts usually employed by the South Dakota Division of Child Support Enforcement when seeking the whereabouts of a parent who owes child support or the sort of efforts employed by a County Sheriff when seeking to serve a warrant) to locate an individual have been used before a suspension can occur without a hearing.

(b) Against Attorney General Ravnsborg: A declaration that the acts and/or omissions

18

described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Attorney General Ravnsborg and his subordinates to refrain from suspending Driver's Licenses without notice and an opportunity to contest the suspension, and before a suspension, a specific finding that reasonable efforts (eg the sort of efforts usually employed by the South Dakota Division of Child Support Enforcement when seeking the whereabouts of a parent who owes child support or the sort of efforts employed by a County Sheriff when seeking to serve a warrant) to locate an individual have been used before a suspension can occur without a hearing.

(c) Against Executive Director Jones: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Executive Director Jones and his subordinates to refrain from suspending Driver's Licenses without notice and an opportunity to contest the suspension, and before a suspension, a specific finding that reasonable efforts (eg the sort of efforts usually employed by the South Dakota Division of Child Support Enforcement when seeking the whereabouts of a parent who owes child support or the sort of efforts employed by a County Sheriff when seeking to serve a warrant) to locate an individual have been used before a suspension can occur without a hearing. Furthermore, against Jones, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(d) Against Director Bollinger: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Director Bollinger and his subordinates to refrain from suspending Driver's Licenses without notice and an opportunity to contest the suspension, and before a suspension, a specific finding that reasonable efforts (eg the sort of efforts usually

19

employed by the South Dakota Division of Child Support Enforcement when seeking the whereabouts of a parent who owes child support or the sort of efforts employed by a County Sheriff when seeking to serve a warrant) to locate an individual have been used before a suspension can occur without a hearing. Furthermore, against Bollinger, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

### LEGAL CLAIM III – VIOLATION OF EQUAL PROTECTION BY SUBJECTING PEOPLE OWING COURT DEBT TO A SIGNIFICANTLY HARSHER COLLECTION SCHEME THAN THOSE OWING AN ORDINARY DEBT

53. This count targets the same features as Claim I, but from a different angle. While Claim I involves Equal Protection by comparing indigent and non-indigent debtors this claim involves equal protection by comparing court debts against private debts.

54. Kurtenbach argues that any statutory scheme that differentiates between state debt and private debts must be "based on assumptions scientifically substantiated." *James v. Strange*, 407 U.S. 128, 133, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972) (quoting *Roth v. United States*, 354 U.S. 476, 501, 77 S. Ct. 1304, 1 L. Ed. 2d 1498(1957) (Harlan, J., concurring in the result)). In *Strange*, the Supreme Court struck down a Kansas statutory scheme observing that the State may not "impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor."Id. at 138. Reference is again made to *Thomas* wherein the Court found "that taking a person's driver's license away is... a threat to the debtor's basic subsistence.... [The taking of a Driver's License is such a] severe a sanction... [that it] greatly harms the debtor's basic subsistence or ability to build economic self-sufficiency." Id. 303 F.Supp.3d at 629. In short, not only is the taking a Driver's License unduly harsh in these circumstances it is wildly counterproductive as it will not help the debtor pay the debts but will inevitably cause further economic blight.

20

Therefore, the Defendants had no *rational* basis to effect this punishment.

55. By imposing conditions and terms on a state debt that would not be available on a private debt the Defendants have again violated Constitutional Equal Protection.

56. Governor Noem knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. This law is applied often enough that Noem knew or should have known of of the Constitutional violations. Furthermore, Governor Noem failed to properly train and supervise her subordinates which allowed the Constitutional violations to occur. Governor Noem's failure to supervise and adequately train her subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference she tacitly authorized the Constitutional violations described herein.

57. Attorney General Ravnsborg knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. This law is applied often enough that Ravnsborg knew or should have known of of the Constitutional violations. Furthermore, Attorney General Ravnsborg failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Attorney General Ravnsborg's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

58. Executive Director Jones knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. This law is applied often enough that Jones knew or should have known of of the Constitutional violations. Furthermore, Executive

Director Jones failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Executive Director Jones's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

59. Director Bollinger knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. This law is applied often enough that Bollinger knew or should have known of of the Constitutional violations. Furthermore, Director Bollinger failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Director Bollinger's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

60. State's Attorney Wendt knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. By requesting that Kurtenbach's license be suspended Wendt caused the Constitutional violation described herein to occur.

61. State's Attorney Kloeppner knew or should have known that a law that allows the Defendants to collect State debts with unduly harsh or discriminatory terms not available to private debts violates Constitutional Equal Protection. By requesting that Kurtenbach's license be suspended Kloeppner caused the Constitutional violation described herein to occur.

62. Kurtenbach seeks the following relief:

(a) Against Governor Noem: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Governor Noem and her subordinates to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts.

(b) Against Attorney General Ravnsborg: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Attorney General Ravnsborg and his subordinates to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts.

(c) Against Executive Director Jones: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Executive Director Jones and his subordinates to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts. Furthermore, against Jones, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(d) Against Director Bollinger: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Director Bollinger and his subordinates to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts. Furthermore, against Bollinger, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(e) Against State's Attorney Wendt: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An

23

injunction enjoining State's Attorney Wendt to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts. Furthermore, against Wendt, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(f) Against State's Attorney Kloeppner: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Kloeppner to refrain from using unduly harsh or discriminatory methods and terms to collect State debts when these same methods and terms would not be available to private debts. Furthermore, against Kloeppner, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

## LEGAL CLAIM IV – VIOLATION OF CONSTITUTIONAL DUE PROCESS BY SUBJECTING KURTENBACH TO A PUNISHMENT IN EXCESS OF WHAT WAS AUTHORIZED BY STATUTE AT THE TIME THE CRIME OCCURRED

63. At the time when the crimes at issue occurred (2007 and 2008) it was not statutorily possible to suspend a Driver's License based upon non-payment of debt in a non-driving court case (excepting non-payment of child support which is not at issue here).

64. Generally, a federal court may vacate a state sentence imposed in violation of due process; for example, if a state trial judge imposed a sentence in excess of state law. *Marzano v. Kincheloe*, 915 F.2d 549, 552 (9th Cir. 1990) (plea of guilty does not permit state to impose sentence in excess of state law despite agreement of defendant to sentence). The same due process principles would seem to forbid members of the Executive Branch from suspending a Driver's License based upon old criminal conduct when that was not an authorized punishment at the time the crime and/or sentencing occurred.

65. Additionally, Kurtenbach was never made aware that losing his Driver's License was a

potential outcome due to his guilty plea in these criminal matters. Because a guilty plea operates as a waiver of important constitutional rights, the Fourteenth Amendment's Due Process Clause requires that a guilty plea not only be made voluntarily, but also knowingly and intelligently "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 162 L. Ed. 2d 143 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)); see also *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). In sum, by exacting a punishment that was never explained to Kurtenbach (and likely several thousand other criminal defendants) the Defendants have committed a sort of retroactive Due Process violation and likely invalidated thousands of guilty pleas that were not made knowingly and intelligently.

66. Governor Noem knew or should have known that a law that allows the Defendants exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process. This law is applied often enough that Noem knew or should have known of of the Constitutional violations. Furthermore, Governor Noem failed to properly train and supervise her subordinates which allowed the Constitutional violations to occur. Governor Noem's failure to supervise and adequately train her subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference she tacitly authorized the Constitutional violations described herein.

67. Attorney General Ravnsborg knew or should have known that a law that allows the Defendants exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process. This law is applied often enough that Ravnsborg knew or should have known of of

the Constitutional violations. Furthermore, Attorney General Ravnsborg failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Attorney General Ravnsborg's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

68. Executive Director Jones knew or should have known that a law that allows the Defendants exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process. This law is applied often enough that Jones knew or should have known of of the Constitutional violations. Furthermore, Executive Director Jones failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Executive Director Jones's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

69. Director Bollinger knew or should have known that a law that allows the Defendants exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process. This law is applied often enough that Bollinger knew or should have known of of the Constitutional violations. Furthermore, Director Bollinger failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Director Bollinger's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

70. State's Attorney Wendt knew or should have known that a law that allows the Defendants

26

exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process.

71. State's Attorney Kloeppner knew or should have known that a law that allows the Defendants exact a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty violates Constitutional Due Process.

72. Kurtenbach seeks the following relief:

    (a) Against Governor Noem: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Governor Noem and her subordinates to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty.

    (b) Against Attorney General Ravnsborg: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Attorney General Ravnsborg and his subordinates to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty.

    (c) Against Executive Director Jones: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Executive Director Jones and his subordinates to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty. Furthermore, against Jones, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

    (d) Against Director Bollinger: A declaration that the acts and/or omissions described herein

violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Director Bollinger and his subordinates to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty. Furthermore, against Bollinger, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(e) Against State's Attorney Wendt: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Wendt to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty. Furthermore, against Wendt, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(f) Against State's Attorney Kloeppner: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Kloeppner to refrain from using a punishment that was not statutorily authorized at the time the offense was committed nor was ever explained to those pleading guilty. Furthermore, against Kloeppner, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

## LEGAL CLAIM V – VIOLATION OF EX POST FACTO CLAUSE BY RETROACTIVELY APPLYING A HARSHER PUNISHMENT

73. Much like the interplay between Claims 1 and III this claim is inextricably tied to the claim in Claim IV however instead of claiming a Constitutional Due Process Violation this claims a Constitutional Ex Post Facto Violation. "A criminal or penal law has a prohibited ex post facto effect if it is 'retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" *Rhines v. Young*, 899 F.3d

482 (8th Cir. 2018) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981)).

74. Defendants will likely argue that statutes at issue are not criminal or penal laws and that issue will need to be briefed, but what can not be disputed is the fact that the Defendants are applying the statutes retrospectively and Kurtenbach was disadvantaged by the retrospective application.

75. Governor Noem knew or should have known that a law that retrospectively inflicts a harsher punishment violates the Ex Post Facto Clause of the United States Constitution. This law is applied often enough that Noem knew or should have known of of the Constitutional violations. Furthermore, Governor Noem failed to properly train and supervise her subordinates which allowed the Constitutional violations to occur. Governor Noem's failure to supervise and adequately train her subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference she tacitly authorized the Constitutional violations described herein.

76. Attorney General Ravnsborg knew or should have known that a law that retrospectively inflicts a harsher punishment violates the Ex Post Facto Clause of the United States Constitution. This law is applied often enough that Ravnsborg knew or should have known of of the Constitutional violations. Furthermore, Attorney General Ravnsborg failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Attorney General Ravnsborg's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

77. Executive Director Jones knew or should have known that a law that retrospectively inflicts

a harsher punishment violates the Ex Post Facto Clause of the United States Constitution. This law is applied often enough that Jones knew or should have known of of the Constitutional violations. Furthermore, Executive Director Jones failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Executive Director Jones's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

78. Director Bollinger knew or should have known that a law that retrospectively inflicts a harsher punishment violates the Ex Post Facto Clause of the United States Constitution. This law is applied often enough that Bollinger knew or should have known of of the Constitutional violations. Furthermore, Director Bollinger failed to properly train and supervise his subordinates which allowed the Constitutional violations to occur. Director Bollinger's failure to supervise and adequately train his subordinates amounts to deliberate indifference towards the Constitutional violations and with this deliberate indifference he tacitly authorized the Constitutional violations described herein.

79. State's Attorney Wendt knew or should have known that a law that retrospectively inflicts a harsher punishment violates the Ex Post Facto Clause of the United States Constitution.

80. State's Attorney Kloeppner knew or should have known that a law that retrospectively inflicts a harsher punishment violates the Ex Post Facto Clause of the United States Constitution.

81. Kurtenbach seeks the following relief:

(a) Against Governor Noem: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Governor Noem and her subordinates to refrain retrospectively applying

harsher punishments than what were authorized at the time the offenses were committed.

(b) Against Attorney General Ravnsborg: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Attorney General Ravnsborg and his subordinates to refrain retrospectively applying harsher punishments than what were authorized at the time the offenses were committed.

(c) Against Executive Director Jones: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Executive Director Jones and his subordinates to refrain retrospectively applying harsher punishments than what were authorized at the time the offenses were committed. Furthermore, against Jones, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(d) Against Director Bollinger: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining Director Bollinger and his subordinates to refrain retrospectively applying harsher punishments than what were authorized at the time the offenses were committed. Furthermore, against Bollinger, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

(e) Against State's Attorney Wendt: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Wendt to refrain from requesting a retrospective application of harsher punishments than what were authorized at the time the offenses were committed. Furthermore, against Wendt, Kurtenbach seeks monetary damages in

an amount to be determined by a jury.

(f) Against State's Attorney Kloeppner: A declaration that the acts and/or omissions described herein violated Kurtenbach's rights under the Constitution of the United States. An injunction enjoining State's Attorney Kloeppner to refrain from requesting a retrospective application of harsher punishments than what were authorized at the time the offenses were committed. Furthermore, against Kloeppner, Kurtenbach seeks monetary damages in an amount to be determined by a jury.

## LEGAL CLAIM VI – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

82. Paragraphs 11-81 are hereby incorporated by reference hereto.

83. Kurtenbach avers that the methods used by the South Dakota Obligation Recovery Center, to collect outstanding court debt, said methods violating various Constitutional protections violate the Fair Debt Collection Practices Act. Specifically, Kurtenbach avers that suspending a Driver's License based solely on a debtors inability to pay, without notice or opportunity to be heard, using methods not available to collect private debts – said methods having no rational basis and inevitably causing more harm than good, violating Constitutional Due Process and Ex Post Facto protections constitutes "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." In violation of 15 U.S.C. § 1692d. Additionally, the above described methods qualify as "unfair or unconscionable means to collect or attempt to collect any debt." In violation of 15 U.S.C. § 1692f.

84. By telling Kurtenbach that the Fair Debt Collection Practices Act does not apply to South Dakota the South Dakota Obligation Recovery Center made false or misleading representations in violation of 15 U.S.C. § 1692e.

85. Kurtenbach seeks the following relief:

    (a)  Against the South Dakota Obligation Recovery Center: A declaration that the acts and or omissions described herein violated Kurtenbach's rights under the Fair Debt Collection Practices Act.

        1.  Actual damages as provided by 15 U.S.C. § 1692k(a)(1) as follows:

            i.  Any lost wages Kurtenbach suffered as a result of his lost employment due to the illegal acts or omissions of the South Dakota Obligation Recovery Center;

            ii.  Damages in an amount to be determined by a jury for causing Kurtenbach to relapse into drug use due to the illegal acts or omissions of the South Dakota Obligation Recovery Center;

            iii.  Damages in the amount of one thousand dollars per day for each day that Kurtenbach spends incarcerated for violations of his federal supervised release, or serving sentences for new crimes that were the natural consequence of Kurtenbach's drug relapse and ill fated attempts to satisfy his old court debts. These were caused by the illegal acts and omissions of the South Dakota Obligation Recovery Center;

        2.  Additional damages in the amount of one thousand dollars as provided by 15 U.S.C. § 1692k(a)(2)(A), due to the illegal acts and omissions of the South Dakota Obligation Recovery Center.

86. While not required at this time Kurtenbach will briefly touch on the issue of causation. The Defendant will inevitably argue that their illegal acts did not cause Kurtenbach to relapse or commit new crimes or at the very least it was not reasonably foreseeable. We can start off with the proposition that every individual who owes a court debts has committed a crime – that is they have already proven a willingness to break the law; an act that the majority of

citizens do not do. The vast majority of convicted criminals suffer from chemical dependency, mental health issues, a variety of other thinking errors or some combination thereof. Based on the vast data available this statement can not be reasonably challenged. In a case tied to the repeatedly referenced Tennessee opinions in *Thomas* and *Hixson*, Judge Trauger foreshadowed what any reasonably intelligent person could see coming:

> "Unlike the power to vote, the ability to drive is crucial to the debtor's ability to actually establish the economic self-sufficiency that is necessary to be able to pay the relevant debt. It does not require reams of expert testimony to understand that an individual who cannot drive is at an extraordinary disadvantage in both earning and maintaining material resources. '[D]riving an automobile" is "a virtual necessity for most Americans.' *Wooley v. Maynard*, 430 U.S. 705, 715, 97 S. Ct. 1428, 51 L. Ed. 2d 752(1977). Even solely on the basis of the features of ordinary life in Tennessee of which the court can take judicial notice, the substantial economic disadvantages associated with being unable lawfully to drive are apparent.

> Most obviously, being unable to drive in Tennessee limits the jobs available to a person and makes holding a job difficult, once the person has it. 'Automobile travel . . . is a basic, pervasive, and often necessary mode of transportation to and from one's home [and] workplace." *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). Some jobs require a person to drive as part of her duties, and even those jobs that do not themselves involve driving generally require the employee to be somewhere, reliably, on time.

> The damage that the lack of a driver's license does to one's employment prospects is just the beginning. Being unable to drive is the equivalent of a recurring tax or penalty on engaging in the wholly lawful ordinary activities of life-a tax or penalty that someone who committed the same traffic violation, but was able to pay her initial traffic debt, would never be obligated to pay. When the State of Tennessee takes away a person's right to drive, that person does not, suddenly and conveniently, stop having to transport oneself and family members to medical appointments, stop having to report to court dates, or stop having to venture into the world to obtain food and necessities. Maybe public transportation will work for some of those activities some of the time, and maybe it will not. Similarly, while some individuals with suspended licenses may be able to rely on family or charitable assistance for some purposes, there is no reason to conclude that such options will be available or adequate in most cases. What, then, is a person on a suspended license to do? The lawful options are simple: she can simply forgo the life activities, no matter how

34

important, for which she cannot obtain adequate transportation, or she can incur additional transportation expenses-making herself that much less likely ever to satisfy her traffic debt.

Of course, an indigent person with a suspended license has another option, besides accepting the practical limitations that the state has placed on her: she can, faced with the need to navigate the world and no feasible, affordable, and legal option for doing so, break the law and drive. The court very deliberately uses "can" here, not "may" or "should," but it would simply be willful blindness to ignore the fact that some debtors with suspended licenses will be tempted to disregard the suspension, at least for pressing needs. By defying her license suspension, however, the indigent debtor puts herself at the risk of incurring more fines, more court costs, and more litigation taxes that will be likely to render the restoration of her rights an even more improbable proposition. See Tenn. Code Ann. 40-35-111(e), 55-50-504(a). If the purpose of such a scheme were to make an indigent driver's first traffic violation her entree into an endless cycle of greater and greater debt, it could be said to serve that purpose well. But the defendants, to their credit, do not assert that they have any legitimate interest in building inescapable debt traps for indigent Tennesseans. Rather, they argue that suspensions for nonpayment of traffic debt are made in furtherance of debt collection. Toward that end, it is hard to say the policies are rationally calculated."

*Robinson v. Purkey*, 326 F.R.D. 105, 156-57 (M.D. Tenn. 2018). The actions of the

South Dakota Obligation Recovery Center in unconstitutionally suspending

Kurtenbach's Driver's License were the direct cause of Kurtenbach's relapse. It is no

stretch to assume that a recently released prisoner with a drug problem would resort to

his old ways when the State unconstitutionally strips his ability to support himself and

his family.

## LEGAL CLAIM VII – INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

87. Paragraphs 11-81 are hereby incorporated by reference hereto.

88. The acts and or omissions described in the above paragraphs constitute the state law torts of

intentional and or negligent infliction of emotional distress.

89. Kurtenbach seeks the following relief:

1.  Against the South Dakota Obligation Recovery Center: A declaration that the acts and or omissions described herein constituted intentional and/or negligent infliction of emotional distress as those terms are defined by South Dakota common law.

    1.  Actual damages as follows:

        1.  Any lost wages Kurtenbach suffered as a result of his lost employment due to the intentional or negligent acts or omissions of the South Dakota Obligation Recovery Center;

        2.  Damages in an amount to be determined by a jury for causing Kurtenbach to relapse into drug use due to intentional or negligent acts or omissions of the South Dakota Obligation Recovery Center;

        3.  Damages in the amount of one thousand dollars per day for each day that Kurtenbach spends incarcerated for violations of his federal supervised release, or serving sentences for new crimes that were the natural consequence of Kurtenbach's drug relapse and ill fated attempts to satisfy his old court debts. These were caused by the intentional and negligent acts and omissions of the South Dakota Obligation Recovery Center;

## ADDITIONAL RELIEF REQUESTED

90. That the Court appoint appoint Daniel Holloway of the Bell Law Firm in Atlanta Georgia to represent Kurtenbach in this proceeding. Holloway has previously, successfully, represented Kurtenbach in efforts to vindicate Constitutional violations by the State of South Dakota.

91. If the Court appoints Holloway or other counsel Kurtenbach will be seeking his costs and attorney fees as provided by  15 U.S.C. § 1692k(a)(3) and 42 U.S.C. § 1988(b).

92. A jury trial on all issues triable by a jury.

93. Any other relief that the Court deems just and equitable.

Dated this 22 day of May, 2019.

Matthew Kurtenbach

## **VERIFICATION**

I, Matthew Kurtenbach, hereby verify under the penalty of perjury that the foregoing information is true, except those matters alleged on information and belief and as to those I believe them to be true.

Dated this 22 day of May, 2019.

Matthew Kurtenbach

Subscribed and sworn to before me this 22 day of May 2019.

RUSSELL LEO BARTELL
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2024

Notary Public
My Commission Expires: 1-31-24

37

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Matthew Kurtenbach

**(b)** County of Residence of First Listed Plaintiff   Lincoln
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

N/A

## DEFENDANTS

Kristi Noem, et al Jayn Rounsborg,
Trevor Jones, Scott Bollinger, Cassie Wenal,
Wendy Richorder, State of SD

County of Residence of First Listed Defendant   Hughes
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

|                           | PTF | DEF |                                                | PTF | DEF |
|---------------------------|-----|-----|------------------------------------------------|-----|-----|
| Citizen of This State     | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State  | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|----------|-------|--------------------|-----------|----------------|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983, 15 U.S.C. 1692K

Brief description of cause:   Civil Rights, FDCPA

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____    DOCKET NUMBER _____

DATE   5-22-19

SIGNATURE OF ATTORNEY OF RECORD   Matthew   Pro-se

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____